IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:24-CR-219 (AMN) |
| | ) | |
| v. | ) | Government's Sentencing Memorandum |
| | ) | |
| **ZACHARY COTA a/k/a Zac Fobare** | ) | |
| **a/k/a zacfobare2020,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, respectfully requests that the Court sentence the defendant, Zachary Cota, to a term of incarceration within the 292 to 327-month functional Guideline range to be followed by a lifetime-term of supervised release. The Government also asks the Court to order the agreed-upon forfeiture of the electronic device on which the defendant possessed child pornography.

### I.     Introduction and Factual Background

On May 10, 2024, the defendant pled guilty to an indictment charging him with one count of Receipt of Child Pornography in violation of 18 U.S.C. §§2252A(a)(2)(A) and (b)(1). Text Minute Entry dated May 10, 2024; *see also* ECF 29 (Plea Agreement). The Court will sentence the defendant on January 30, 2025.[1]

The government adopts the facts as set forth in the presentence investigation report prepared by the United States Probation Office, ECF 49 (PSIR), which in turn relied upon the Plea Agreement, law enforcement reports, and other materials.

---

[1] Earlier today, the defendant filed a motion asking the Court to adjourn sentencing and the deadline for sentencing submissions by 30 days. The Court has not acted on the request. Although the government does not oppose the requested adjournment, it files this sentencing submission in an abundance of caution.

Specifically, the defendant used his cellular phone to access a social media platform to pressure children into sending him child pornography. PSIR ¶¶4(e)–(g), 15–19 (Victim 1); PSIR ¶¶4(h)–(j), 20–22 (Victims 2 and 3). When the defendant's probation officer—who was supervising the defendant for his prior child sex offense—asked to see the defendant's cellular phone, the defendant locked himself in his bathroom and began deleting child pornography from the phone. PSIR ¶¶4(k), 10. A forensic search of that device led to the recovery of over 900 images of child pornography. PSIR ¶¶4(m), 12. Some of these images were screenshots of videochats in which a child exposes his penis and the defendant is in the corner, indicating he was a participant in the chat. PSIR ¶13(c).

The chats reveal the manipulation that Cota used to get his victims to send him pictures. Cota told Victim-1 that he was "so sexy" and "repeatedly told [Victim-1] that he loved him. PSIR ¶22(a). On one occasion, Victim-1 sent Cota "ILY" for "I Love You," Cota responded "send now." PSIR ¶17(c). Shortly thereafter, Cota wrote, "I'm going to be sad for the rest of the night now because you won't send me a picture." *Id*. "Cota repeatedly threatened to call [Victim-1]'s mother if he did not send pictures, including counting down from ten to one stating he would call when he finished counting, with [Victim-1] pleading for him not to call her." PSIR ¶18. Cota then gave very specific instructions for how to pose in the pictures he sent. *Id*.; *see also* PSIR ¶22(d) (giving direction to Victim-4).

Similarly, after initially receiving pictures of Victim-2's penis, Cota demanded additional pictures with the threat that Cota would call his mother "and tell her what you've done in the past." PSIR ¶22(b).

## II. Applicable Statutory and Guidelines Provisions

### a. Statutory Maximum and Minimum Penalties

*Imprisonment*: At least 15 years and not more than 40 years, pursuant to 18 U.S.C. §2252(b)(1).

*Fine*: $250,000, pursuant to 18 U.S.C. §3571(b)

*Supervised Release term*: At least 5 years and up to life, pursuant to 18 U.S.C. § 3583(k).

### b. Guidelines Provisions

#### i. Offense Level

The United States adopts Probation's offense level calculation, including the Base Offense level, enhancements, credit for acceptance of responsibility, and conclusion that the Adjusted Offense Level is 40. *See* PSIR ¶¶32–45.

#### ii. Criminal History Category

The PSIR correctly calculated the defendant's criminal history and determined that the defendant's Criminal History Category is I. PSIR ¶¶47–56. *However*, Criminal History Category I drastically understates the nature and extent of the defendant's criminal conduct.

#### iii. Guidelines Range and Sentence

The Sentencing Guidelines advise that the Court impose a sentence of 292 to 365 months incarceration. U.S.S.G. ch. 5; pt. A.; PSIR ¶80. However, given the plea agreement's agreed-upon disposition, the functional Guideline range advises 292 to 237 months imprisonment.

## III. Government's Sentencing Recommendation

Based on all of the information before the Court, the United States respectfully requests that the Court sentence the defendant a term of incarceration between the functional Guideline

range of 292 and 327 months to be followed by a lifetime-term of supervised release.[2]  The sentence that the Government recommends here is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2).

**a.     The Nature, Circumstances, and Seriousness of the Offense Make a Within-Guidelines Sentence Appropriate**.  The Supreme Court noted every child pornography "victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 572 U.S. 434, 457 (2014).  Accordingly, child "'pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.'" *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) (quoting David Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 WAKE FOREST L. REV. 535, 545 (1981)).  "The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse—including [the defendant]—plays a part in sustaining and aggravating this tragedy." *Paroline*, 572 U.S. at 457.

The offense conduct and related conduct involves the defendant's efforts to induce children to produce child pornography for him, two of whom actually complied with his demands.  PSIR

---

[2] Although the Second Circuit "noted" that in the narrow circumstance "where the Defendant was not involved in production of child pornography and had no contact with children" a straightforward application of the sentencing Guidelines can lead to unreasonable sentences that are inconsistent with what 18 U.S.C. § 3553 requires," *United States v. Muzio*, 966 F.3d 61 (2d Cir. 2020), Cota (1) directed multiple children to create child pornography for him (2) at a time that he was under supervision for molesting children.  A Guideline sentence is therefore appropriate here.  In any event, the government's requested sentence in this case adequately reflects the statutory factors to be considered under 18 U.S.C. § 3553(a) in imposing a sentence.

¶¶4, 14, 16–24, 30.  For the victims who complied with the defendant's demands for child pornography, the defendant provided detailed instructions for how the children should produce the child pornography.  PSIR ¶¶4(f), 18.  The defendant attempted to cover his tracks by (1) deleting photos of child pornography on his phone when his probation officer asked to review it, (2) falsely telling the probation officer the photos contained images of the defendant engaged in sexual activity with an adult woman, (3) avoided going on camera when a victim's mother video-chatted him, and (4) falsely telling a victim's mother that a child—not a 30-year-old man—was demanding naked pictures from the victim.  PSIR ¶¶10, 15, 19.  After procuring a first picture from a victim, Cota would threaten to tell the victims' mothers "what [they] have done" unless they sent more nude images.  PSIR ¶¶4(f), 4(i), 21, 22(b).

      b.      **The History and Characteristics of the Defendant**

**Cota is a 31-year-old man with a decades-long documented history of criminal sexual activity towards children.**  As a juvenile, the defendant engaged in troubling sexual conduct.[3]  PSIR ¶50.  The defendant's mother reported he "has mental health issues" and questioned "whether her son was culpable enough to understand what he did."  PSIR ¶50.  The victim's parents did not pursue charges because they understood Cota was going to be getting the help he needed and the pastor of their church assured everyone "this will never happen again."  PSIR ¶50.

    But it did happen again.  And again.  And again.  In March of 2019, the defendant—now a 26-year-old adult—went to a house in Rotterdam to work as a contractor; shortly after the defendant left, a six-year-old boy told his grandmother that Cota rubbed the boy's penis in the

---

[3] This memorandum will not publicly disclose the details because the incident occurred when Cota was a juvenile.

garage. PSIR ¶52. Following his publicized arrest, it came to light that the defendant repeatedly put his hands down an eight-year-old boy's pants over a period of nearly two years. PSIR ¶52. The investigation into that abuse revealed further revealed that, "on numerous occasions," Cota also pulled down the pants of that child's three-year-old brother touched his penis. PSIR ¶52. On October 29, 2019, the Schenectady County Court sentenced Cota to 10 years of probation for committing Course of Sexual Conduct Against a Child in the Second Degree, resulting in his sole criminal history point. Less than three years after starting probation, the Defendant committed the offense conduct.

Criminal History Category I drastically understates Cota's criminality.[4] "A defendant's record of past criminal conduct is directly relevant to" the sentencing purposes articulated in Section 3553(a). U.S.S.G. Ch. 4, pt. A, Introductory Commentary. "Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." *Id*. After avoiding the juvenile justice system, the defendant committed a series of hands-on sexual offenses against at least three children, ages three-, six-, and eight-years-old. Yet he only has a single criminal history point.

When determining where within the agreed-upon disposition to sentence the defendant, the Court should give greater consideration to the conduct in defendant's prior crimes rather than his sentence. Overreliance on Cota's prior sentence rather than the facts of the crime can produce an absurd results. A useful point of comparison is Jean Valjean, the protagonist in Victor Hugo's *Les Misérables*. A fictional French court sentenced Valjean to 19 years' of hard labor for stealing a loaf of bread to feed a starving child. Both Cota and Valjean have only one prior conviction: Cota

---

[4] To be clear, the Government is <u>not</u> asking for an upward departure pursuant to U.S.S.G. §4A1.3. Rather, the Government only requests that the Court consider this information in determining where to sentence Cota within the agreed-upon sentence.

got probation for molesting three children, and Valjean received a harsh prison sentence for stealing bread. Although Valjean's fictional crime leaves him a higher criminal history category than Cota's actual crimes, Cota's criminal history is more concerning than Valjean's. When considering Cota's criminal history in light of his history and characteristics as well as the need to protect the public from further crimes, 18 U.S.C. §3553(a)(1) and (2)(c), the Court should consider what Cota did rather than the state court's response.[5]

**Cota's personal characteristics support a within-Guidelines sentence**. He has physical health conditions unremarkable for a man of his age. *See* PSIR ¶62. Though Cota has a moderate substance abuse history, by the time of the offense conduct, his alcohol use was not problematic.[6] PSIR ¶¶65–66. Finally, "throughout his upbringing," Cota received services for "sexually and physically inappropriate behaviors as well as his cognitive and developmental delays." PSIR ¶65. Cota received treatment and care for multiple mental health diagnoses. PSIR ¶66–67. At school, Cota displayed "sexually provocative behavior." PSIR ¶67. His IQ was measured at 62 in 2007 and 65 in 2023. PSIR ¶¶67, 71.

Notwithstanding his diagnoses and developmental delays, Cota appears to have appreciated the wrongfulness of his conduct at the time of the offense. Cota told Victim-1 that he was a child using his older brother "Zac's" account. PSIR ¶15. This shows that Cota knew that eight-year-old Victim-1 would not have wanted to be talking to a man in his late 20s, and that Cota would have to pretend to be a child in order to persuade Victim-1 to produce and send the child

---

[5] As Cota victimized four children here while on state probation, the state court's sentence did not protect the public from further crimes.

[6] Cota told the U.S. Probation Office that he got a medical marijuana card in 2013. PSIR ¶73. However, medical marihuana did not become legal in New York until 2016. https://cannabis.ny.gov/medical-cannabis.

pornography. When Victim-1's mother video chatted Cota, he refused to show his face, told her that he was 12-years-old, said that his nine-year-old brother had been using the phone and was "probably inappropriate." PSIR ¶15. Again, this shows Cota knew he could not reveal himself to be a fully-grown adult requesting child pornography from an eight-year-old. Further, rather than provide his cell phone at the lawful request of his probation officer, Cota instead deleted child pornography images and then lied about the types of pictures he deleted. PSIR ¶10. Finally, Cota also initially falsely told the FBI that the social media account he used to obtain the child pornography had been hacked. PSIR ¶23. This demonstrate that Cota knew he was doing something wrong by soliciting multiple children to produce child pornography and amassing 900+ images of child pornography. Whatever impact Cota's diagnoses and delays may have upon him, they did not impact his culpability.

**At the time of the offense, Cota was under the supervision of the Rensselaer County Probation Department**. PSIR ¶9. Some of the conditions of probation were specifically designed to detect and deter internet-based sexual offenses against children. PSIR ¶¶4(b), 9–10. Cota violated those conditions by downloading social media applications, communicating with minors, and—of course—committing the offense conduct. PSIR ¶10. The commission of the offense while under supervision, especially supervision for a similar offense, highlights the need for a substantial period of incarceration.

    c.    **A Within-Guidelines Sentence Protects the Public from the Future Crimes of the Defendant**. Cota has been committing sexually criminal behavior for nearly 20 years. The first documented incident occurred while he was a juvenile, for which he got treatment. PSIR ¶50. He apparently displayed sexually problematic behavior throughout his time in school. PSIR ¶67. After molesting three children in his 20s, he was sentenced to probation. PSIR ¶52. And while

on probation, he victimized four children via the internet. Nothing short of incarceration has worked. Every break Cota has received has only emboldened him. The Court should accordingly impose a within-Guidelines period of incarceration to protect the public from his long-running impulse to commit sexual offense against children.

        **d.**        **A Within-Guidelines Sentence Promotes Respect for the Law and Deterrence, and it Represents Just Punishment**. The defendant displayed no respect for his young victims or the laws meant to protect them. "'A child who has posed for the camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.'" *Ferber*, 458 U.S. at 759 (quoting Shouvlin, 17 WAKE FOREST L. REV. at 545). The low-tech, analogue system that concerned the Supreme Court four decades ago was not nearly as complex as the digital distribution system in which the defendant participated.

    One U.S. Court of Appeals said,

> Young children were raped in order to enable the production of the pornography that the Defendant both downloaded and . . . consumed himself. . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. §3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading . . . child pornography, the greater the customer demand for it and so more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). Even setting aside the fact that Cota directed children in the production of child pornography, his voracious appetite for child pornography helped fuel the demand that leads children getting raped on camera. A term of imprisonment within the advisory guidelines range will promote respect for the law, provide just punishment, and further both specific deterrence to the defendant and general deterrence to others.

## IV. CONCLUSION

The Court should sentence the defendant to a term of incarceration between 292 and 327 months, a lifetime-term of supervised release, and forfeiture of the device he used to store child pornography. Such a sentence is sufficient, but not greater than necessary, to comply with the Congress' sentencing directives.[7] For the foregoing reason, the United States also opposes any variance.

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

By:   /s/ Jonathan S. Reiner
Jonathan S. Reiner
Assistant United States Attorney
Bar Roll No. 702645

**CERTIFICATE OF SERVICE**

I hereby certify on January 13, 2025, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the Defendant.

 /s/ Jonathan S. Reiner
Jonathan S. Reiner
Assistant United States Attorney
Bar Roll No. 702645

---

[7] The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(h), (i)(1)(c). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.